UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HDDA, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>HITESH PATEL, et al.,<br><br>                    Defendants. | Case No.  23-mc-80270-DMR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR EXECUTION SALE SPECIAL PROCEDURES ORDER**<br><br>Re: Dkt. No. 35 |

Judgment Creditor HDDA, LLC seeks an order allowing it to modify certain procedures for the sale of assets belonging to Reena Patel, Bhavesh Patel, and Hansanben Patel (together with Hitesh Patel, "Judgment Debtors")[1] that were seized in two safe deposit boxes pursuant to a writ of execution.  [Docket No. 35 (Mot.).]  Judgment Debtors did not file an opposition, nor did they respond to the court's order to show cause ("OSC") as to why they failed to respond to the motion.[2] [Docket No. 39 (OSC).]  The court finds this matter suitable for disposition without oral argument (Civ. L.R. 7-1(b)) and, for the reasons stated below, grants in part and denies in part HDDA's motion.

## I.    BACKGROUND

On August 17, 2021, Judgment Debtors were sued in the Northern District of Georgia for the breach five loan agreements totaling approximately $11,400,000.  [*See HDDA, LLC v. Patel et*

---

[1] As Judgment Debtors have the same last name and for the purpose of clarity, the court refers to the individual Judgment Debtors by his or her first name.

[2] After Judgment Debtors failed to respond to the court's OSC, HDDA filed a notice of non-response and non-opposition urging the court to grant its motion.  [Docket No. 41.]  Judgment Debtors' failure to respond is not, in and of itself, grounds to grant HDDA's motion.  The court has an independent obligation to ensure that proper procedures are followed.

*al.*, Case No. 21-cv-03349-TWT ("*HDDA I*"), Docket No. 1 (compl.).[3]  After granting summary judgment in favor of HDDA, on August 14, 2023, the *HDDA I* court entered final judgment in favor of HDDA as follows:

- As to count I, judgment against Hansaben in the amount of $1,093,372.61;

- As to count II, judgment against Hitesh, Bhavesh, and Reena, jointly and severally, in the amount of $1,665,322.25;

- As to count III, judgment against Bhavesh and Reena, jointly and severally, in the amount of $2,291,079.53;

- As to count IV, judgment against Bhavesh and Reena, jointly and severally, in the amount of $2,599,853.81; and

- As to count V, judgment against Hitesh in the amount of $5,490,865.48.

[*HDDA I*, Docket No. 69 (MSJ order); *id.*, Docket No. 72 (final judgment); Docket No. 35-1 (Benjy Decl.), Ex. 1 (final judgment).]  Each claim asserted breach of a specific loan agreement.  [*See HDDA I*, Docket No. 1 (compl.).]

On October 17, 2023, HDDA registered the final judgment in this District.  [Docket No. 1; *see also* 28 U.S.C. § 1963 ("A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.").]  On November 28, 2023, HDDA filed an application for writ of execution as to the Judgment Debtors.  [Docket No. 9.] The Clerk's Office issued the writ on December 1, 2023.  [Docket No. 10.]

On February 2, 2024, HDDA levied the writ on JPMorgan Chase Bank, N.A. ("Chase"), "with instructions that the levy apply to all deposit accounts, safe deposit boxes, and other assets in

---

[3] The Georgia Action was initiated by Access Point Funding I 2017-A, LLC, successor in interest to Access Point Financial, Inc.; APF – CPX I, LLC, successor in interest to Access Point Financial, Inc.; and APF – CPX II, LLC, successor in interest to Access Point Financial, Inc. (collectively, the "APF Plaintiffs").  [*See HDDA I*, Docket No. 1 (compl.).]  On December 30, 2021, the APF "Plaintiffs assigned all interests in the loans underlying their claims to non-party HDDA." [*HDDA I*, Docket No. 69 at 6–7.]  On June 20, 2023, the *HDDA I* court granted the AFP Plaintiffs' motion to substitute HDDA as the sole plaintiff.  *Id.* at 9.

United States District Court
Northern District of California

the names of any of the [Judgment] Debtors." [Benjy Decl. ¶ 6 (emphasis omitted).]  According to HDDA, Chase issued a Memorandum of Garnishee[4] which identified two safe deposit boxes leased by Chase: box no. 811017 to Reena and Bhavesh, and box no. 811019 to Hansaben and her late husband and nonparty, Jashvant Patel.  *Id.* ¶¶ 7–8.  Both safe deposit boxes are located at the Chase branch at 5655 Geary Boulevard, San Francisco, California 94121.  *Id.* ¶ 7.

On May 21, 2025, the U.S. Marshal Service ("USMS") seized, opened, and inventoried the contents of both safe deposit boxes pursuant to the writ of execution and in the presence of HDDA's counsel.  *Id.* ¶¶ 13–14; *see id.*, Ex. 3 (inventory of Reena and Bhavesh's box); *id.*, Ex. 4 (inventory of Hansaben's box); *id.*, Ex. 5 (photographs of items found in boxes).  Both boxes contain several coins and items of jewelry that appear to be made of gold and precious stones.  *See id.*, Exs. 3–5.  Reena and Bhavesh's box also contained $530 in cash.  *Id.*, Ex. 3 at ECF p.32.

At the request of HDDA's counsel, the USMS took the seized items to Bay Area Metals for an informal valuation.  *Id.* ¶ 19; *see id.*, Ex. 6 (opinion of value).  According to Bay Area Metals, "much, but not all, of the contents of the Boxes" are worth a total of $264,190.[5]  *Id.* (both).  The boxes' contents remain in the USMS's custody.  *Id.* ¶ 18.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 69 governs the execution of a final judgment. "The procedure on execution -- and in proceedings supplementary to and in aid of judgment or execution -- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a).  California law therefore applies here; if, however, there is an applicable federal statute, the court follows federal law.

## III.    DISCUSSION

HDDA intends to proceed with an execution auction of the contents of the boxes and to credit bid on the items.  Benjy Decl. ¶ 21.  However, HDDA seeks an order allowing it to deviate from certain auction procedures in three respects: (1) the use of an auction website to display the items to be sold in lieu of displaying them at the auction; (2) to sell the property in the safe deposit

---

[4] HDDA did not submit the Memorandum of Garnishee with its motion.
[5] HDDA does not identify which items were not included in the opinion of value.

boxes as a single lot per box, instead of on an item-by-item basis; and (3) immediate disbursal of cash contained in one of the safe deposit boxes.

As a preliminary matter, while HDDA's motion cites statutes, it is devoid of any case law or other authority in support of its arguments and requests. HDDA has repeatedly failed to cite legal authority in support of the relief it seeks. *See, e.g.*, Docket No. 13 (noting that HDDA did not "cite any authority supporting" its request for a "special appointment to serve process" and ordering HDDA to "file a motion that provides supporting facts and legal authority for the relief it seeks"); Docket No. 23 ("Although HDDA cites California Code of Civil Procedure section 700.150 as authority for the relief it seeks and lists various provisions of that statute, it has not demonstrated compliance with the requirements of that statute. Specifically, HDDA has not shown that sections 700.150(a) or (d) have been satisfied.").

### A. Request for Judicial Notice

HDDA buries within the Benjy Declaration a request for judicial notice:

> [According to probate filings filed by Hansaben Patel, Jashvant Patel passed away on October 19, 2019, in Cusco, Peru. A true and correct copy of such a filing is attached hereto as **Exhibit "2"** and is incorporated herein by this reference and the Court is requested to take judicial notice of Hansaben Patel's representation concerning the death of her husband therein.]

Benjy Decl. ¶ 8(B) (brackets and emphasis in the original). The request cites no legal authority.

It is unclear precisely what HDDA seeks to judicially notice—i.e., whether HDDA seeks judicial notice of (1) Exhibit 2 itself, the petition for final distribution on waiver of account and for allowance of compensation for services rendered, filed on September 12, 2022 by Hansaben in the Superior Court of San Francisco, County of San Francisco; or (2) a specific "representation concerning the death of [Hansaben's] husband" asserted within Exhibit 2. If the latter, the court notes that the petition contains 33 paragraphs of "representations concerning" Jashvant's death, and HDDA does not specify which one(s) it seeks to judicially notice. *See* Benjy Decl., Ex. 2.

Given its vague nature, the court denies the request for judicial notice.

### B. Use of an Auction Website

According to HDDA, the safe deposit boxes contain "a large quantity of individual, small,

1    high value jewelry items" that "are individually valuable and difficult to display and guard."  Mot.

2    at 8.  HDDA argues that "it is neither safe, economical, nor practical to require that the contents of

3    the Boxes be displayed at the auctions" because "[d]oing so would require wasteful spending to

4    secure a secure, indoor location for the sale to occur and would require the retention of 2 to 4 private

5    security guards to assist with the sale and guard the contents of the Boxes before and during the

6    auction," and, absent such measures, "it would be dangerous to conduct the auction in a public

7    setting."  *Id.* at 9.  As an alternative to publicly displaying the safe deposit boxes' contents, HDDA

8    proposes creating a website "that will furnish potential bidders with copies of the Inventories,

9    Report, and 20 or more sample photographs of the contents of the Boxes."  *Id.*

10        California Code of Civil Procedure 701.570(c) provides that "[i]f personal property capable

11   of manual delivery is to be sold, it shall be within the view of those who attend the sale unless, upon

12   application of the judgment creditor or the judgment debtor, the court orders otherwise."

13        The court denies HDDA's request without prejudice for three reasons.  First, HDDA cites

14   no authority for the proposition that the high value of items to be auctioned constitutes good cause

15   not to display them at the auction.[6]  Second, HDDA fails to provide any details about the website

16   beyond the information that would be displayed.  For instance, HDDA does not provide a URL for

17   the website or explain when, how, and for how long the website would be publicized so as to give

18   the public sufficient notice in advance of the auction.  Lastly, HDDA does not explain why it would

19   require "2 to 4 private security guards" to protect the items or why it would not be possible conduct

20   the auction with, for instance, a single security guard.  HDDA also gives no indication as to how

21   much it would cost to hire a security guard(s) and does not state who would bear the burden of such

22   costs.

23        Absent such information, the court denies HDDA's request to use a website to display the

24

25   _____

     [6] HDDA argues that "Sec. 700.570(c) provides that for personal property to be sold at an execution
26   sale, the . . . items to be sold must be physically displayed at the auction *unless* for good cause the
     court orders otherwise."  Mot. at 8 (emphasis in the original).  As there is no California Code of
27   Civil Procedure section 700.570(c), the court assumes that HDDA meant to refer to section
     701.570(c).  In addition, HDDA does not explain where the "good cause" standard comes from or
28   why it is the appropriate standard to evaluate its request.  The term "good cause" does not appear in
     section 701.570's statutory language.

1    items.

2        **C.    Sale as One Lot per Box**

3        HDDA moves to have the contents of each box sold as a single lot, rather than selling each

4    item separately.  Mot. at 9–10.  It is HDDA's counsel's opinion that "proceeding with the auctions

5    as lot sales will allow the auctions to become more streamlined, less time consuming, less costly,

6    less burdensome, and less expensive and will avoid the risk that certain individual items failing to

7    sell or selling for well below their true value."  Benjy Decl. ¶ 27.  Counsel further avers that, "[g]iven

8    the quantity of items involved, an individual piece by piece sale of the contents of the Boxes could

9    take one or more full days to complete and would likely require the retention of a private auctioneer

10   at significant added expense."  *Id.*

11       Pursuant to California Code of Civil Procedure section 701.570(d),

12           Property shall be sold separately or in such groups or lots as are likely
             to bring the highest price.  The judgment debtor may request that the
13           property be sold separately or together and may request that the
             property be sold in a particular order.  If the judgment debtor is not
14           present at the sale, the request may be made in writing and delivered
             to the levying officer prior to the sale.  The levying officer shall honor
15           the request if, in the opinion of the levying officer, the requested
             manner of sale is likely to yield an amount at least equal to any other
16           manner of sale or the amount required to satisfy the money judgment.
             The levying officer is not liable for a decision made in good faith
17           under this subdivision.

18   It is not apparent that a court order is required to sell the items as a lot.  Rather, the plain language

19   of section 701.570(d) suggests that the request is more appropriate for the levying officer.  *See* Cal.

20   Civ. Proc. Code § 701.570(d) ("If the judgment debtor is not present at the sale, ***the request may be***

21   ***made in writing and delivered to the levying officer*** prior to the sale.") (emphasis added); *see also*

22   Cal. Civ. Proc. Code § 481.140 ("'Levying officer' means the sheriff or marshal who is directed to

23   execute a writ or order . . .").  HDDA does not otherwise cite any authority for the proposition that

24   a court order is necessary to sell the boxes' contents as a lot.  Accordingly, this request is denied

25   without prejudice.

26       **D.    Disbursal of Cash**

27       HDDA seeks an order authorizing the USMS to disburse the $530 cash found in Reena and

28   Bhavesh's safe deposit box and requiring HDDA to credit the $530 to the judgment owed by Reena

United States District Court
Northern District of California

6

and Bhavesh.  Mot. at 10; *see* Benjy Decl., Ex. 3 (inventory for box no. 811017).  The court grants HDDA's motion to disburse the $530 cash, which shall be credited towards the balance of the judgment owed by Reena and Bhavesh.

**IV.     CONCLUSION**

For the reasons stated above, the court grants HDDA's motion to disburse the $530 cash in Reena and Bhavesh Patel's safe deposit box, No. 811017, and to credit the $530 towards the balance of the judgment owed by Reena and Bhavesh.  The motion is denied without prejudice in all other respects.

No later than October 10, 2025, HDDA shall serve a copy of this order on Judgment Debtors by any means reasonably calculated to provide actual notice and file a proof of service thereof.  If Judgment Debtors do not have counsel, the court refers them to the section "Representing Yourself" on the Court's website, located at https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties. Parties may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: October 9, 2025

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California